# IN THE COURT OF APPEALS OF IOWA

No. 21-0167
Filed April 28, 2021

**IN THE INTEREST OF K.A.-C., M.A., and K.A.,**
**Minor Children,**

**T.C., Mother,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

　　The mother appeals the termination of her parental rights to her three children. **AFFIRMED.**

　　Amy E. Garreans, Council Bluffs, for appellant mother.

　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

　　Whitney Ann Estwick of Estwick Law LLC, Council Bluffs, attorney and guardian ad litem for minor children.

　　Considered by Doyle, P.J., and May and Greer, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to her three children, K.A.-C. (born in 2018), M.A. (born in 2008), and K.A. (born in 2007).[1] Her parental rights to K.A.-C. were terminated pursuant to Iowa Code section 232.116(1)(h) (2020); her rights to M.A. and K.A. were terminated pursuant to section 232.116(1)(e) and (f). Further, the juvenile court found section 232.116(1)(*l*) was a ground for termination as to all three children. The mother challenges the statutory grounds for termination and argues the juvenile court should have granted her request for more time to work toward reunification.[2] The mother also claims, for the first time on appeal, that the State did not provide reasonable efforts to achieve reunification.

**I. Facts and Earlier Proceedings.**

After a long history, the family again came to the attention of the Iowa Department of Human Services (DHS) in September 2019 after it was alleged the mother was using drugs and living in a van in an alley with her six children.[3] A

---

[1] The father of M.A. and K.A. consented to the termination of his rights and the father of K.A.-C. failed to appear at the termination trial. Neither father appeals.

[2] The mother originally filed a motion for a continuance to allow additional time for reunification on November 6, 2020. The juvenile court denied the motion. The mother renewed her motion for a continuance at trial, requesting additional time to work toward reunification with the children. The juvenile court noted it could not continue the termination hearing as it was already taking place, so the mother recast her request as a motion to dismiss the petition to terminate parental rights. The stated goal of this motion was to allow the child-in-need-of-assistance (CINA) case to continue, and allow the mother additional time to reunify with the children. Her motion to dismiss was denied.

[3] The record shows founded and confirmed child-abuse cases in 2011, 2014, 2015 and 2016. The mother has three additional children who are not a subject of this appeal. Those children were also removed from the mother's care and have been placed in the guardianship of other caregivers since August 2020.

child protection worker observed the van was in disarray, stating "one could not see the bottom of the floor of the van. There was also a strong unpleasant smell in the van, and every surface appeared to be covered with an unknown sticky substance." Her school-aged children were not attending any school programming. The DHS investigation resulted in a founded abuse assessment against the mother for denial of critical care, failure to provide proper supervision, and dangerous substances.

An ex parte removal order, at the request of DHS, followed that month. With the children out of the parents' care, the juvenile court ordered the mother to engage in family safety, risk, and permanency (FSRP) services, obtain chemical-dependency and mental-health evaluations, follow provider recommendations, and submit to random drug testing. Later, in December, the children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2), (g), and (n) (2019). Multiple review hearings followed, and the juvenile court found the mother made little progress in working toward reunification.

A permanency hearing took place in August 2020, at which point the court changed the permanency goal from reunification to termination of parental rights and adoption. In October 2020, the State petitioned for termination of the mother's parental rights, and a hearing was scheduled for December. In the interim, the mother moved for a continuance to allow additional time for reunification. The motion to continue was later recast as a motion to dismiss the State's termination petition, which the juvenile court denied. The termination hearing took place in December, and the juvenile court terminated the mother's parental rights to all three children in January 2021. This appeal followed.

After removal of the children, the mother was offered a number of services to work toward the goal of reunification.[4]  There were multiple barriers to reunification including housing instability, lack of employment, and mental-health issues.  But one of the main concerns was the mother's substance abuse.  This case started based on allegations that the family was living in a van where the mother was doing drugs.  Upon investigation by DHS and a Fremont County Sheriff's Deputy, the Deputy believed the mother was under the influence of pills, marijuana, and methamphetamine.  One of the children later told a DHS worker the mother was doing drugs in the van, and when the mother ran out of drugs she could not care for the children.  The child said the mother had no money to feed the family and had been shooting up a crystal white substance with used needles.  The mother also has a history with DHS dating back to 2011, and it was known she had substance-abuse issues.

The mother was placed on the call-in drug screening system in late October 2019.  At first she would not wear a sweat patch due to concerns for false positive results.  She also claimed to be allergic to the sweat patch, although there is no supporting evidence for her claim.  The juvenile court found the mother simply did not want to wear the sweat patch because she continued to use methamphetamine.  While the mother has downplayed her substance abuse and suggests she has only used a few times since the children were removed, the

---

[4] Services offered include: FSRP services; chemical-dependency evaluations; mental-health evaluations; chemical-dependency treatment; mental-health treatment; random drug screening; transportation assistance; housing assistance; visitation with the children; family foster care; relative care; and DHS case management.

record shows she tested positive for methamphetamine in October and November 2019, and again in April, July, August, and most recently in November 2020. Further, since removal the mother missed at least eighteen scheduled drug tests by either not showing up or outright refusing to be tested. In at least two instances (in September and November 2020) staff reported concerns that the mother's sweat patch had been tampered with.

The mother has received multiple substance-abuse evaluations and is diagnosed with severe stimulant use disorder. Her participation in substance-abuse treatment has been sporadic. In late October 2020, the mother's substance-abuse therapist recommended the mother participate in intensive outpatient treatment for four to six weeks, followed by six to nine months of extended outpatient treatment. By the time of the December 2020 termination hearing, the mother was no longer attending substance-abuse treatment. She claimed it was because of a lapse in her insurance coverage, but she had not followed through with the earlier substance-abuse treatment recommendations when coverage was afforded.

Another unaddressed area of concern is the mother's mental-health condition. The mother obtained multiple mental-health evaluations and is diagnosed with bipolar I disorder,[5] borderline personality disorder, post-traumatic stress disorder, and major depressive disorder. She stopped the medications prescribed to treat her diagnoses. Mental-health providers agreed the mother's diagnoses required substance-abuse evaluations and mental-health therapy on a

---

[5] It was noted the mother's bipolar disorder was potentially induced by methamphetamine use.

regular basis. It was also recommended she obtain psychological and psychiatric evaluations. Yet she has not followed through with these recommendations. The mother originally was receiving mental-health services from a provider but was discharged in October 2020. That provider noted, "[The mother] had a difficult time keeping her appointments, she also struggled with accepting that there could be any value in pursuing mental health help. [The mother] failed to buy into the idea that mental health treatment could be helpful for her." After her discharge, the mother obtained another mental-health evaluation at a different therapy clinic. The counselor reiterated earlier recommendations for treatment, but the mother was discharged in November 2020 due to lapse in health insurance.

In addition to the drug use and mental-health concerns, housing and employment stability has been a major barrier to reunification. Starting with the removal because the children were living with the mother in a filthy van, the mother failed to obtain appropriate housing. At the time of the termination trial, the mother was renting a single bedroom and living with a coworker unknown to DHS. Prior to that, she lived with various boyfriends. For a time she lived in an apartment with multiple people unknown to DHS, and it was alleged there was ongoing methamphetamine use in the apartment. The mother has not found suitable housing for herself and her three children throughout these proceedings, despite assistance from an FRSP provider. As to employment, the mother was working at a fast food restaurant at the time of the trial but had not maintained stable employment in the previous year. Due to her financial situation, providers gave her gas cards to get to and from her appointments. But she used those gas cards

on cigarettes and other items. With this history, we address the mother's contentions.

**II. Standard of review and error preservation.**

The State concedes the mother preserved error on her claim that there was insufficient evidence to support the statutory grounds for termination but disputes she preserved error on her reasonable-efforts claim. "Although DHS must make reasonable efforts in furtherance of reunification . . . parents have a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). An objection should be made early in the process so changes can be made if appropriate. *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Here, the mother did not object to the nature or extent of services prior to the termination hearing, nor did she claim the State failed to provide reasonable efforts at the termination hearing.[6] Thus, we conclude the mother cannot challenge the sufficiency of the services provided to her and whether they constituted reasonable efforts by DHS on appeal. *See Id.* at 148.

We review termination of parental rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual

---

[6] The mother complained at the termination hearing, and in her appellate brief, that she was required to restart substance-abuse and mental-health treatment programs due to a change in caseworkers. We understand the mother's assertions as an attempt to explain her apparent lack of progress in court ordered services, rather than a claim that the State failed to provide reasonable efforts toward reunification.

findings, but they are not binding on us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Our paramount concern is the children's best interests. *Id.*

**III. Analysis.**

We employ a three-step analysis to review the termination of parental rights under Iowa Code chapter 232. *See In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). First we must determine whether a ground for termination has been established under section 232.116(1). *Id.* at 40. If so, we consider whether termination is in the children's best interests. *Id.* Third, if the best-interests framework supports termination, we must consider whether any statutory exceptions exist to preclude termination of parental rights. *See* Iowa Code § 232.116(3); *P.L.*, 778 N.W.2d at 39–40.

**A. Statutory grounds for termination of parental rights.**

We first address the mother's challenge to the statutory grounds for termination under Iowa Code section 232.116(1). Finding sufficient evidence in this record, the juvenile court terminated the mother's parental rights for all three children under paragraph (*l*),[7] for the youngest child (K.A.-C.) under paragraph (h),[8]

---

[7] Section 232.116(1)(*l*) requires proof of the following:

> (1) The child has been adjudicated a [CINA] pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

[8] Section 232.116(1)(h) requires proof of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.

and for the two older children (M.A. and K.A.) under paragraphs (e) and (f).[9] "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Paragraphs (f), (h), and (*l*) all require proof that the child cannot be returned to the parent. And under paragraphs (f) and (h), the State only has to show the children cannot be returned "at the present time." Iowa Code § 232.116(1)(f)(4), (h)(4); *see D.W.*, 791 N.W.2d at 707 (interpreting "at the present time" to mean the time of the termination hearing).

Here the mother challenges only the fourth element of paragraphs (f) and (h), arguing generally that the State failed to prove the children could not be returned to her care because she had housing, employment, and the ability to care for the children. We disagree.

First, the mother did not have adequate housing at the time of the termination trial. She was renting a single bedroom and living with a coworker

---

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[9] Section 232.116(1)(f) requires proof of the following:
(1) The child is four years or age or older.
(2) The child has been adjudicated a [CINA] pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

unknown to DHS. Regarding employment, the mother claimed she was working at a fast food restaurant, although she only offered a hat from her work uniform to prove employment. And the housing and employment history of the mother offered no assurance she could offer a stable home for these children.

Turning now to substance-abuse concerns, the mother was diagnosed with severe stimulant use disorder in October 2020. Her substance-abuse therapist recommended she engage in an intensive outpatient treatment program for four to eight weeks and then transition to extended outpatient treatment for another six to nine months. Yet, in November 2020, her mental-health provider noted the mother denied and minimized her methamphetamine use and that the most recent positive drug test was "wrong." The children were originally removed from her care because they were residing in a filthy van where the mother was using drugs. She admitted as much. A DHS investigation resulted in a founded abuse assessment against the mother for denial of critical care, failure to provide proper supervision, and dangerous substances. One of her children reported they had been living in the van without adequate food and indicated the mother could not care for the family when she needed drugs after seeing the mother use a white crystal substance by needle. There were other instances when the mother showed up for visits with the children acting erratically, leading staff to believe she was under the influence. And this court has found a parent's methamphetamine use, in itself, can create a dangerous environment for a child. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020). The mother's drug use has presented a danger to her children.

As to the mother's claim that her substance abuse was not a barrier preventing reunification with the children, we find her inability to stay clean and complete substance-abuse treatment proves otherwise.

> [W]e must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety . . . and establish the essential support system to maintain the sobriety, there is little hope of success in parenting.

*In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). Here, the mother tested positive for methamphetamine repeatedly following removal of the children. She also frequently skipped drug tests, refused to comply with testing, and it was alleged she tampered with sweat patches used for drug testing. *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care.").

In sum, there are still multiple barriers preventing the return of the children to the mother's care. We cannot return the children to the mother's custody "if by doing so [they] would be exposed to any harm amounting to a new [CINA] adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). The mother's lengthy battle with methamphetamine addiction, and the toll her addiction has already taken on the children, demonstrates the risk of harm here is substantial. Further, the mother has made no progress in addressing her substance-abuse concerns throughout these proceedings. Finally, we also find the mother's housing and employment instability prevented the children from being returned to her care.

Clear and convincing evidence demonstrates the mother was unable to resume custody of the children at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

**B. Best interest of the children and statutory exceptions.**

The mother argues termination of her parental rights is not in the best interest of the children because they are bonded to her and it would be detrimental to the children's mental and emotional well-being. The mother argues there is clear and convincing evidence termination would be detrimental to the children due to the closeness of the parent-child relationships. But, "safety" is a "defining element[]" of our best-interest analysis. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring); *see* Iowa Code § 232.116(2) (noting "the court shall give primary consideration to the child[ren]'s safety"). Although the record shows the children are loyal to their mother, the bond is not so strong as to deny them a permanent stable home life. Further, for months now, the children have been in a stable and loving environment in a pre-adoptive foster home where their needs are being met. The juvenile court noted the older children wish to remain in the foster home. In the words of the juvenile court:

> These children have been out of [the mother's] care since September 9, 2019. The children need permanency in their lives. Any bond which exists between children and [the mother] is far outweighed by their need for permanency. This Court cannot deprive these children of permanency after the State has proven that the grounds for termination exist by hoping that someday [the mother] will learn to be a parent and be able to provide a stable home for her children.

We agree. Thus, we find termination of the mother's parental rights is in the best interest of the children, and we decline to apply any of the permissive statutory exceptions found in section 232.116(3).

**C. Request for additional time to work toward reunification.**

The mother filed a motion for continuance on November 6, 2020, requesting the juvenile court continue the termination hearing scheduled for December 4 and allow her additional time to reunify with her children. Denying the motion, the juvenile court reasoned "the grounds for the continuance go to the substantive issues that will be determined at the time of the hearing." At the termination hearing, the mother again requested a continuance. The juvenile court denied the request. So the mother recast her request as a motion to dismiss the petition to terminate parental rights. The mother's stated goal was to allow herself additional time to reunify with the children. The juvenile court denied this motion as well. Given the mother's track record with substance abuse, her inability to have housing for her children, and her overall instability, we find termination is in the best interests of these children. *See In re A.B.*, 815 N.W.2d 777-78 (Iowa 2012) (finding best interests of the children are served by termination since it "would be less detrimental than the harm caused by continuing the parent/child relationship."). Having already concluded the grounds for termination were met under section 232.116(1)(f) and (h), and in light of our decision that termination of parental rights is in the best interest of the children, we affirm the denial of the mother's motion to dismiss the termination petition.

**IV. Conclusion.**

With the best interests of the children in mind, we affirm the termination of the mother's parental rights to all three children.

**AFFIRMED.**